## Samuel REYES

v.

## PROVIDENCE PLACE GROUP, L.L.C.

### No. 2003–623–Appeal.

Supreme Court of Rhode Island.

June 24, 2004.

 

Daniel A. Sumner, Warwick, for Plaintiff.

Michael A. DeLuca, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, and SUTTELL, JJ.

## OPINION

PER CURIAM.

The defendant, Providence Place Group, L.L.C. (PPG), appeals from a Superior Court judgment in favor of the plaintiff, Samuel Reyes (Reyes), for $175,000, plus interest and costs.

This case came before the Supreme Court for oral argument pursuant to an order directing the parties to show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the record and the memoranda filed by the parties, we are of the opinion that cause has not been shown, and we reverse the judgment of the Superior Court.

### Facts and Procedural History

At the time of the incident, PPG was the owner of the Providence Place Mall (the mall). Reyes was an employee of Unicco Service Company, a cleaning service responsible for cleaning the food concession area at the mall. On June 24, 2000, in the course of his employment, Reyes was injured when a freight elevator malfunctioned, stalling and trapping him inside "for an extended period of time." Because the elevator did not contain a telephone and the emergency switch was not functioning, Reyes was unable to summon assistance. Compounding his predicament, the elevator's air conditioner was not working. As a result, Reyes alleged that the temperature inside the chamber rose to approximately 110 degrees, causing Reyes to lose consciousness. As he passed

out, Reyes fell backwards and injured his shoulder.

After Reyes was rescued from the elevator, he was admitted to Rhode Island Hospital. He later came under the care of Dr. William Lloyd Barnard, who recommended that Reyes undergo rotator cuff surgery. Shortly thereafter, he returned to his native country of Guatemala, where he continued treatment. At the time of the Superior Court hearing, he asserted that he was partially disabled, alleging that but for the injury he still would be working today.

Communications between the parties commenced in April 2001. Reyes's attorney notified PPG that Reyes had been injured in the elevator while doing his job at the mall, and requested that PPG refer the matter to its insurance carrier. According to PPG, this letter was received by Robert N. McGinnity (McGinnity), director of security for the mall, who forwarded the letter to AON Risk Management (AON), PPG's insurance broker. AON then forwarded the letter to Travelers Insurance Group (Travelers), PPG's liability insurer. McGinnity averred that PPG normally does not get further involved with a claim after turning a letter of representation over to the insurance carrier.

On or about April 17, 2001, Deborah McMahon (McMahon), a Travelers claim representative, called Reyes's counsel "to obtain some initial information about the claim." McMahon said that she then began to gather information about the claim. She called Reyes's counsel again on July 25, 2001, and requested Reyes's medical records. McMahon said she had one more conversation with counsel on October 19, 2001, during which she indicated that she had visited the site of the accident and that she would attempt to get more information from the elevator service company. On November 14, 2001, Reyes's claim was reassigned to Shirley Medeiros (Medeiros), another claim representative.

Medeiros averred that she received a copy of a letter from Reyes's counsel to PPG requesting a copy of elevator certificates. She also said that she contacted Schindler Elevator Corporation (Schindler) about the incident, and put Schindler on notice that Travelers would be asking Schindler to take over the handling of the claim. On January 16, 2002, she wrote to Reyes's counsel notifying him that she had asked Schindler to take over the claim. The next day, Medeiros received a call from Reyes's counsel. She said that she explained to him that she had forwarded his request for the elevator certificates to Schindler, and that Schindler had informed her that they would forward the claim to Schindler's insurance carrier. She also informed counsel that she would follow up with Schindler's insurer to see whether it would take over the handling of the claim pursuant to an indemnification agreement between PPG and Schindler. It does not appear that there was any further communication between Travelers, or PPG, and Reyes's counsel.

Four months after communications ended, on April 24, 2002, Reyes filed suit against PPG and caused service to be effectuated on PPG's agent for service of process. The agent then faxed and mailed the summons and complaint to PPG on the same day. What happened next, however, remains a mystery. PPG explained that its "usual procedure in handling a lawsuit filed against it is for PPG's agent for service of process to turn the summons and complaint over to the manager of the Providence Place Mall, who then turns the summons and complaint over to the director of security for the Providence Place Mall, who forwards the summons and complaint to AON Risk Management, who in turn forwards it to Travelers." However, McGinnity averred that neither he nor John Charters, the manager of the mall, has any record of having received the

summons and complaint. Whatever the reason, Travelers, the entity normally responsible for defending PPG in a personal injury case, did not receive timely notice that Reyes had filed the present action. As a result, the complaint never was answered.

On September 11, 2002, nearly four months after filing his complaint, Reyes applied for entry of default, pursuant to Rule 55(a) of the Superior Court Rules of Civil Procedure for PPG's failure to answer or otherwise defend against the complaint. The clerk of the court entered default against PPG the next day. Reyes advised PPG by letter dated May 5, 2002, that a hearing on an oral proof of claim was scheduled for May 16, 2003. No one appeared on behalf of PPG at the hearing. At the proof of claim hearing, Reyes presented his account of his injuries along with medical bills, employment verifications, and affidavits from various medical personnel. The hearing justice awarded Reyes $175,000, and said, "[j]udgment shall enter in that amount that the claim has been proved." The hearing justice then directed Reyes's counsel to "[s]ubmit a judgment, please, with all the appropriate interests and costs."

After the hearing, Reyes's counsel entered an order directing "[t]hat judgment may enter for Plaintiff in the amount of $175,000.00 plus statutory interest and costs." Although an entry on the docket sheet of the Superior Court case record indicates that judgment was entered for Reyes on May 19, 2003, a "judgment" on a separate document was not entered at that time.

Shortly thereafter, PPG filed a motion to vacate the entry of default along with a motion to stay the entry of judgment pending the court's decision on PPG's motion to vacate the entry of default. Reyes objected to both motions, and the matter was heard in Superior Court on June 26, 2003.

The hearing justice denied PPG's motion to remove the default. In so ruling, he found that Reyes waited well beyond the twenty-day period in which to answer a complaint as provided by Rule 12(a)(1)(A) of the Superior Court Rules of Civil Procedure before moving for entry of default. The hearing justice also noted that the proof of claim was properly noticed and that PPG had an opportunity to defend against the claim. Moreover, in denying PPG's motion, the hearing justice applied an "excusable neglect" standard to PPG's conduct in failing to defend the claim:

"The Providence Place Group by virtue of its conduct here, and I should say quite clearly no excusable neglect has been shown, and, on the contrary, the plaintiff did everything it is required to do, and these rules exist for a purpose, and they apply to corporations just like they apply to people * * * but the person on the hook or the entity on the hook is the Providence Place Group, and what they did wrong was fall asleep at the switch because of this convoluted way they've determined they are going to address claims in court that are filed against them."

Accordingly, the hearing justice denied PPG's motion to remove the default. He also ordered that judgment on the claim be entered for the full amount. Judgment for $175,000, plus statutory interest and costs, was entered shortly thereafter from which PPG timely appealed.

### Discussion

■ On appeal, PPG argues that the Superior Court erred by applying the "excusable neglect" standard in considering its motion to vacate the entry of default. PPG asserts that because judgment on the default never was entered, the hearing jus-

tice should have applied the "good cause" standard pursuant to Rule 55(c) and not the more stringent "excusable neglect" standard under Rule 60(b)(1) of the Superior Court Rules of Civil Procedure. PPG contends that because the order that Reyes submitted after the proof of claim hearing says that "judgment [may] enter * * *" and that Reyes was to "[s]ubmit a judgment * * *[,]" no judgment had been entered at the time that PPG filed its motion to vacate the entry of default. PPG maintains that pursuant to Rule 58(a) of the Superior Court Rules of Civil Procedure, a "judgment" must be set forth on a separate document and signed by the clerk of the court. Therefore, it posits, the hearing justice should have applied the "good cause" standard to its motion to vacate entry of default rather than the "excusable neglect" standard.

Rule 55(a) provides for the entry of default in cases in which "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend * * *." In such instances, the clerk will enter judgment against the non-defending party when "the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain * * *." Rule 55(b)(1). "In all other cases the party entitled to a judgment by default shall apply to the court therefor * * *." Rule 55(b)(2). In such cases, a hearing may be held to determine the amount of damages. *Id.* Rule 55 does not discuss how a judgment must be entered after a proof of claim hearing, but Rule 58(a) demands that, after a trial or hearing, every judgment be set forth on a separate document. Therefore, default judgments that result from a proof of claim hearing similarly must be set forth on a separate document.

█ Rule 55(c) provides: "*Setting Aside Default.* For *good cause* shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." (Emphasis added.) *See also R.C. Associates v. Centex General Contractors, Inc.,* 810 A.2d 242, 245 (R.I. 2002) (per curiam). We review a Superior Court entry of default for abuse of discretion or error of law. *See R.C. Associates,* 810 A.2d at 245. We must resolve, therefore, whether only the entry of default had been entered at the time that PPG moved to vacate the default or whether "judgment" indeed had been entered, which would necessitate applying the standard specified under Rule 60(b). Rule 60(b) provides in pertinent part:

> "*Mistake; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.* On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or *excusable neglect; * * *.*" (Emphasis added.)

As is clear from the transcript of the June 26, 2003 hearing, the hearing justice applied the "excusable neglect" standard to PPG's motion to vacate the default. Rule 58(a) requires that "[e]very judgment shall be set forth on a separate document. A judgment is effective and shall be deemed entered when so set forth and signed by the Clerk." In this case, a judgment had not been entered before the hearing on PPG's motion to vacate the default. Although the order entered after the hearing on the proof of claim directed that "judgment may enter," no separate judgment, reflecting the award to Reyes, had been entered.

We recently have addressed a similar issue in which the parties disputed whether an order directing that "judgment shall enter * * *" constituted a judgment for

appeal purposes. *Norwest Mortgage, Inc. v. Masse,* 799 A.2d 259, 260 (R.I.2002) (per curiam). We held that the order directing judgment to be entered "was interlocutory because it directed that 'final judgment shall enter' for certain named defendants." *Id.* at 262. In the present case, we hold that the order directing that "judgment may enter" similarly was interlocutory and failed to fulfill the requirements of Rule 58(a).

Reyes's reliance on our opinion in *Murphy v. Bocchio,* 114 R.I. 679, 683, 338 A.2d 519, 523 (1975), is misplaced. He points to that case for the proposition that "[t]he finality contemplated by Rule 60(b) envisions an order that definitely terminates the litigation and leaves nothing more for the court to decide." *Id.* However, that is not all that we had to say on the subject of finality. We continued, "If it appears from the order that something remains to be done before the rights of the litigants are fixed, the requisite finality to which the rule refers has not been reached." *Id.* As is clear from the language of the order, something remained to be done. If the order said, "judgment *may* enter," then it could not, at that point, have entered. The hearing justice specifically instructed Reyes's counsel to submit a *judgment.* Instead, he submitted an order. Therefore, the requisite finality to which Rule 60(b) refers had not been reached. *See id.* The hearing justice acknowledged as much at the hearing on June 26, 2003, when he said, "The Supreme Court has made it clear on numerous occasions that there must be a separate document denominated Judgment * * *."

Accordingly, the appropriate standard for the Superior Court to apply on a motion to vacate default before judgment on the default has been entered is the "good cause" standard under Rule 55(c). We previously have held that under Rule 55(c), "the only showing required for re-

moving [a] default [is] 'good cause' and not the 'mistake, inadvertence, surprise, or excusable neglect' showing which would [be] demanded under [Rule] 60(b), had the default been followed by the subsequent entry of a final judgment." *Berberian v. Petit,* 118 R.I. 448, 452, 374 A.2d 791, 793 (1977). Furthermore, we have held that "where there are no intervening equities, any doubt [about the existence of good cause,] should as a general proposition, be resolved in favor of the movant" so that the issue can be decided on the merits. *Id.* at 452–53, 374 A.2d at 793 (quoting 6 James W. Moore et al., *Federal Practice* ¶ 55.10[1], at 55–235–36 (2d ed. 1976)). We also have enumerated additional grounds upon which a motion to vacate default may be granted:

> "A Rule 55(c) motion also may be granted whenever the court finds that the default was not the result of gross neglect, that the nondefaulting party will not be substantially prejudiced by the reopening, and the party in default has a meritorious defense." *Security Pacific Credit (Hong Kong) Ltd. v. Lau King Jan,* 517 A.2d 1035, 1036 (R.I.1986) (quoting 10 Wright, Miller & Kane, *Federal Practice and Procedure:* Civil 2d § 2696 at 518–19 (1983)).

In addition, we also have joined federal courts in resolving doubts in favor of removing default in actions "where large sums of money are involved in the suit." *R.C. Associates,* 810 A.2d at 245 (citing *Security Pacific Credit (Hong Kong) Ltd.,* 517 A.2d at 1037).

In this case, the hearing justice summarily found that PPG had not shown "excusable neglect" sufficient to warrant setting aside the default. He did not apply either the "good cause" standard or the standard from *Security Pacific Credit (Hong Kong) Ltd.,* 517 A.2d at 1036, as required by Rule 55(c) when judgment has

not yet been entered. The hearing justice erred in failing to do so.

■ "Excusable neglect" is a more rigorous standard than "good cause," and it requires a party to show "that the neglect * * * was occasioned by some extenuating circumstances of sufficient significance to render it excusable." *Daniel v. Cross*, 749 A.2d 6, 9 (R.I.2000) (per curiam) (quoting *Fields v. S. & M. Foods, Inc.*, 105 R.I. 161, 162, 249 A.2d 892, 893 (1969) (per curiam)). We have held that the excusable neglect that would qualify a party for relief "is generally that course of conduct that a reasonably prudent person would take under similar circumstances." *Id.* (quoting *Astors' Beechwood v. People Coal Co.*, 659 A.2d 1109, 1115 (R.I.1995)). "It is well settled that motions to vacate a judgment are left to the sound discretion of the motion justice and will not be disturbed on appeal unless an abuse of discretion or error of law is shown." *Labossiere v. Berstein*, 810 A.2d 210, 213 (R.I.2002) (per curiam). Furthermore, "[t]he burden of proof is on the moving party." *Iddings v. McBurney*, 657 A.2d 550, 553 (R.I.1995).

In this case, the hearing justice made an error of law in failing to consider the motion to vacate entry of default under the appropriate standard. We do not, however, intend to imply that, under the current facts, "good cause" has been shown. We merely hold that the proper standard has not been applied to the facts.

We agree with the hearing justice that when served with process PPG channels the summons and complaint through what appears to be "a labyrinthian or byzantine course before it finally reaches the carrier charged with contractual obligations * * * to defend * * * [PPG]."

We also realize, however, that, given the exigencies of operating a large commercial retail mall, such a procedure may not constitute gross neglect. We also do not make a determination about the merits of PPG's asserted defense.[1] Therefore, we remand the case to the Superior Court for findings pursuant to the "good cause" standard under Rule 55(c).

Finally, we observe that this entire procedural morass, and its associated expense, might have been obviated had Reyes simply forwarded a copy of his complaint to Travelers, the insurance carrier with whom he previously had been communicating. We do not imply that Reyes was under any obligation to do so; merely that it would have been the better practice, and common courtesy, to notify Travelers. This is not a case in which the insurance carrier was stonewalling or otherwise acting in bad faith. On the contrary, Travelers appears to have investigated the claim, requested medical records, and notified Reyes that the insurance carrier for the elevator servicing company might be handling the claim. Clearly, the onus should not fall upon Reyes to determine the appropriate carrier with whom to negotiate a potential settlement. However, it undoubtedly would have been prudent for him at least to have notified Travelers of the filing of his complaint, particularly in light of the policy in favor of removing an entry of default.

## Conclusion

For the foregoing reasons we reverse the judgment of the Superior Court and remand the case for further proceedings as directed by this opinion. The papers in

---

1. PPG asserts that it fulfilled its duty of reasonable care by employing Schindler to service and maintain the mall's elevators. Therefore, PPG asserts, had default not been entered, Schindler would have been responsible for any judgment owed to Reyes.

this case shall be returned to the Superior Court.

Justices GOLDBERG and FLAHERTY did not participate.