DECISION
This case has had a tortured history. Its route has been repeatedly confronted by the failure of the defendants and their counsel to timely respond to Court dates and rule deadlines. They blame everyone else for their inactions. This strategy has worked in their favor as the numerous continuances and missed dates resulted in delaying judgment, delaying issuance of executions on the judgment, and a confused travel. To unravel what should be a relatively routine District Court appeal, this Court must set forth its conclusions at length by this Order.
 Facts
The facts of this case are straightforward. Val-Goia alleges that the defendants dumped waste on its property and Val-Goia seeks the cleanup costs.
 Travel in the District Court
On September 28, 2006, Val-Goia made a written demand by a letter from its attorney to the Blamires. Apparently, there was no response. *Page 2 
On October 25, 2006, Val-Goia filed a complaint with the Third Division District Court. Service of process was effectuated on Earl, Sylvia and Brian Blamires on October 28, 2006.[1]
On November 6, 2006, the District Court granted plaintiff's motion to assign and scheduled the trial for November 21, 2006. On the same day, Earl and Brian Blamires sent letters to Val-Goia's counsel denying the claims and indicating they were unavailable. In response, Val-Goia's attorney promptly wrote to the Blamires, insisting that they must file a response with the Court, and the November 21, 2006, date was still scheduled.
On November 9, 2006, the District Court received the denial letter of Earl Blamires dated November 6, 2006.
On November 21, 2006, Val-Goia's motion for default judgment was granted. The Blamires did not appear in District Court on that day. The Court scheduled the matter for oral proof of claim for January 2, 2007.
On November 30, 2006, Val-Goia's counsel kindly informed the Blamires that they had been defaulted. Time passed and the Blamires continued to do nothing.
On December 21, 2006, Val-Goia's attorney wrote to Attorney Perlmutter, apparently, as a result of an earlier telephone call. The letter asked Mr. Perlmutter if he represented the Blamires.
On January 2, 2007, the case appeared on the District Court calendar, apparently, on oral proof of claim. Attorney Perlmutter entered his appearance for the Blamires. The case was continued to January 9, 2007. *Page 3 
Also, on January 2, 2007, Attorney Perlmutter mailed a variety of documents, including a motion to vacate the default, and affidavits from each of the Blamires dated December 28, 2006. Attorney Perlmutter scheduled his motion for hearing for January 9, 2007. These documents were received by the District Court on January 5, 2007.
On January 9, 2007, the case was heard by the District Court. The docket entry reads "Judgment by default shall remain in full force and effect. No excusable neglect has been shown to Court. Oral proof of claim presented. R/A 1/16/07 2:00 to render decision."
On January 10, 2007, (after the District Court had received affidavits from plaintiff) the Court docket reflects "Final Judgment approved for Plaintiff for $6400" plus a counsel fee of $2112. The Blamires appealed the same day.
 Travel in the Superior Court
The case took a similarly convoluted path in the Superior Court. Without reviewing the docket at length, the case has numerous date certain trial dates, discovery requests, and the like. Finally, the case came on for trial in October, 2007. In a Decision issued on November 30, 2007, this Court refused to address the merits. This Court found that the District Court default remained in full force and effect. Consistent with the travel of the case, a period of confusion ensued, and the Blamires did little. Deadlines and show cause dates were set by the Superior Court, [2] and ignored.
After this Court remanded the case to the District Court, the Blamires returned to this Court arguing that the appeal preserved their right to appeal the entry of the default judgment. Without objection, the parties agreed to schedule the matter for hearing de *Page 4 novo on the issue of whether the District Court default judgment should be vacated.[3] This matter came on for hearing before the Superior Court in September, 2008.
 Standard of Review
The first issue to be decided by the Court is which standard of review to apply. The Court queries whether the Order below, which is the subject of this review, is a default, or a default judgment.
A default, entered pursuant to District Court Rule 55(c), may be vacated for good cause shown." A default judgment is more difficult to vacate, requiring specific findings, such as excusable neglect, as set forth in Rule 60.[4] Clearly, the District Court indicated that it had entered a "judgment." On November 30, 2006, the Court granted the "motion for default judgment", but continued the case for a determination of damages. On January 5, 2007, the Blamires moved to vacate the default. Final judgment was not entered until January 10, 2007, well after the Blamires had moved to vacate.
In Reyes v. Providence Place Group, LLC, 853 A.2d 1242 (R.I. 2004), the Superior Court had applied the excusable neglect standard for vacating a judgment. On review, the Supreme Court noted that the Superior Court had directed judgment to enter for a certain amount. While an order had been submitted, a separate judgment document had not been submitted or entered. The high court held:
 Therefore, the requisite finality to which Rule 60(b) refers had not been reached. . . .
 * * * Accordingly, the appropriate standard for the Superior Court to apply on a motion to vacate default before *Page 5 
judgment on the default has been entered is the "good cause" standard under Rule 55(c). Reyes at 1247.
Clearly, the Supreme Court was following the dictates of Superior Court Rule 58(a) which requires "Every judgment shall be set forth on a separate document. A judgment is effective and shall be deemed entered when so set forth and signed by the Clerk." District Court Rule 58(a) is quite different:
 Every judgment shall be set forth in writing. A judgment is effective and shall be deemed entered when so set forth and signed by the clerk or the judge. Entry of judgment shall not be delayed for the taxing of costs.
Unlike the Superior Court, no separate document is required to be filed for a District Court judgment.[5] Hence, this Court needs to determine if cause exists, pursuant to District Court Rule 60, to vacate the judgment. More than good cause must be shown. Here, the Blamires claimed that they failed to respond because of excusable neglect.
As the Reyes court stated:
 "Excusable neglect" is a more rigorous standard than "good cause," and it requires a party to show "that the neglect . . . was occasioned by some extenuating circumstances of sufficient significance to render it excusable." Daniel v. Cross, 749 A.2d 6, 9 (R.I. 2000) (per curiam) (quoting Fields v. S. M. Foods, Inc., 105 R.I. 161, 162, 249 A.2d 892, 893 (1969) (per curiam)). We have held that the excusable neglect that would qualify a party for relief "is generally that course of conduct that a reasonably prudent person would take under similar circumstances." Id. (quoting Astors' Beechwood v. People *Page 6 Coal Co., 659 A.2d 1109, 1115 (R.I. 1995)). "It is well settled that motions to vacate a judgment are left to the sound discretion of the motion justice and will not be disturbed on appeal unless an abuse of discretion or error of law is shown." Labossiere v. Berstein, 810 A.2d 210, 213 (R.I. 2002) (per curiam). Furthermore, "[t]he burden of proof is on the moving party." Iddings v. McBurney, 657 A.2d 550, 553 (R.I. 1995). Reyes at 1248
At hearing, the Blamires submitted nothing which was excusable neglect for failing to appear at the District Court trial. Earl Blamires claimed he had a doctor's appointment, but never substantiated it. He never identified a medical provider or an ailment. He never suggested a new court date. He never produced a doctor's excuse at the District Court level or before this Court. Brian Blamires claimed that a "preexisting work commitment," never specifically identified, was more important than a court trial date. Sylvia Blamires offered no excuse, though the Court could speculate that she was with her husband. Mrs. Blamires never even answered the complaint.
Further, the motion to vacate the default was not filed until after the New Year. In September 2006, the Blamires had received demand letters. In October 2006, they received complaints. In November 2006, they were told to file answers with the Court and appear at the Court. On November 30, 2006, they were told they were defaulted.
The Court doubts the credibility of Earl and Brian Blamires. Earl testified that he hand-delivered his answer to the Court, though no response was filed until November 9, 2006. He then contradicted himself by claiming no answer was filed. Earl Blamires first claimed he read the summons. When pressed, Earl Blamires testified that he did not read the small print. Earl testified he did nothing for his son Brian, who obviously submitted a similar letter. Earl claimed that he was demanding a court date that he would choose, but *Page 7 
Val-Goia's attorney did not respond to him. His obligations to answer and appear at Court dates remained, but were unfulfilled.
Brian Blamires testified that he received the summons and left it to his father to contact the attorney. He testified that she insisted on an "inconvenient date," and admits he did not appear in Court. Repeatedly claiming "we're just lay people," he simply ignored the summons and the need to appear at Court hearing.
By their own claim, they demanded a court date fitting their own convenience, without ever telling the Court. Frankly, having observed the Blamires on several occasions, the Court does not believe they would leave their fate to the opposing attorney or to the Court. This Court finds and concludes that the Blamires simply ignored the Court deadlines and requirements. Their actions were of avoidance, not compliance. They did not behave as reasonably prudent individuals. No extenuating circumstances were ever shown. The Blamires simply ignored and delayed.[6] This conduct was not excusable nor was it mere neglect.
Recently, Chief Justice Williams noted:
 ". . . Justice is based on the relationship among people, but it must be based upon the rule of law. . . . [Judges] do not have a commission to solve society's problems, as they see them, but simply to decide cases before them according to the rule of law." State v. Lead Industries, Association, Inc., *Page 8 951 A.2d 428, 436 (R.I. 2008) quoting the United States Supreme Court Chief Justice in part.
Accordingly, it is the Court's role to enforce the rule of law where the law is firmly established and being ignored. The rules should not be enforced simply for delay.[7]
If the default judgment was vacated, this Court would be obligated to determine "such terms as are just." While requiring the defaulted parties to pay for future litigation expenses may be unreasonable, this Court would require, based on the findings set forth above, that the Blamires pay all attorneys fees and costs already incurred by Val-Goia as a result of the default. See Allen v. South County Hospital,945 A.2d 289, 294 (R.I. 2008); applying Societe Internationale PourParticipations Industrielles et Commerciales, S.A. v. Rogers,357 U.S. 197, 209-10, 78 S. Ct. 1087, 2 L.Ed.2d 1255 (1958).
This would result in the Blamires paying for some of the bills which Val-Goia's first counsel submitted and additional bills resulting from the representation by present counsel for Val-Goia in this Court. In a recent case our high court struck down an order requiring the defaulted party to post a bond to pay for all costs which would be incurred after default is vacated. Allen, supra. The Blamires failure to respond timely as a result of this default, has led to Val-Goia's incurrence of significant fees, through no fault of its own. The prejudice to Val-Goia may be even greater than the payment of these fees. Val-Goia was required to incur clean-up fees years ago, and has been deprived of the use of its real estate or the use its funds for years as a result of the Blamires' delay. *Page 9 
Mr. Pagliarini, the principal witness of Val-Goia, was a pleasant man of older years. While his memory seemed sufficient at the hearing, the delay may have prejudiced Val-Goia's case significantly.
Finally, even if the Blamires were required merely to present "good cause" to this Court, they failed to do so. Good cause is considered on a case by case basis. In applying the good cause standard inReyes, this Court considers whether there are intervening equities, whether gross neglect occurred, and the extent of the prejudice on the nondefaulting party. Reyes at 1247. Here, all three factors weigh substantially in favor of Val-Goia and against removal of the default. Simply put, the Blamires delayed too long, allowed too many injustices to occur, and provided insufficient justification for their original delay to justify removal of the default or the default judgment at this time.
 Conclusion
For the reasons stated, this Court sustains and confirms the District Court's Default Judgment. Judgment shall enter for plaintiff for $6400, plus post judgment interest, prejudgment interest from the date the cause of action accrued (April 23, 2004) and costs.
[1] The Blamires testified they were served on October 25, 2006, but the return of process shows otherwise.
[2] See Superior Court Orders of May 5 and May 30, 2008.
[3] Without repeating the complex travel of this case at length, it is noted that Val-Goia's exasperated attorney may have concurred simply to avoid another protracted procedure and to bring this case to some just conclusion.
[4] The District Court rules are almost identical to R.I. Superior Court Rules 55 and 60.
[5] The reporter's notes to District Court Rule 58 are worthy of review. They read in part ". . . The reference to the judgment becoming effective when set forth and signed by the judge, as well as the clerk, is added in the interest of preserving the practice of the judge signing the judgment at the time he [or she] renders his [or her] decision. . . . Rule 58(a) does adopt for District Court practice the requirement that the judgment be set forth on a separate document." But a compiler's note for the 1990 amendment indicated the rule was change "approved the substitution of `in writing' for `on a separate document.'" Clearly, the rules were modified to alleviate the need for a separate document.
[6] The Blamires conduct was consistent throughout their defense. They were served but did not respond to the court. They did not appear on the day of the scheduled trial. They moved to vacate after the Court had ruled. The Blamires' attorney delayed in entering an appearance, further confusing Val-Goia's counsel. The Superior Court travel is just as onerous. In January, 2007, Val-Goia attempted to schedule the case for proof of damages. The Blamires' attorney sent in an entry of appearance with a copy of a protracted court excusal. In April, 2007, the Court scheduled the matter and another court excusal was submitted by counsel. Eventually, the case was tried in the fall and the Court scheduled the case for a hearing on the motion to vacate in December of 2007. After at least three continuances, in May of 2008, the Court indicated it would enter judgment on or after May 12, 2008. Again, the Blamires did not respond. On May 30, 2008, this Court remanded the case to District Court. Only then, did the Blamires move to vacate. Val-Goia is not responsible for these delays. Val-Goia consistently attempted to move forward. Val-Goia filed its complaint 23 months ago, and the Blamires have been in default for 22 months. The Blamires have never been anxious to move forward and consistently delayed execution of the judgment.
[7] The rules are "construed to secure the just, speedy and inexpensive determination . . ." District Court Rule 1. The rules should be "construed to secure simplicity in procedure . . . and the elimination of unjustifiable expense and delay. Superior Court Rule 2.