Justice INDEGLIA,
with whom Justice FLAHERTY joins, dissenting.
Although I agree with the majority’s analysis and holding regarding G.L.1956 § 33-28-1, I disagree with that portion of its opinion pertaining to G.L.1956 § 9-21-6. I do so for three reasons. First, I believe that the majority abandoned our precedent of deferring to the hearing justice’s fact-finding determinations. Second, under the majority’s opinion, the standard of excusable neglect will be greatly relaxed. And third, I believe that the majority incorrectly shifted the burden of proof under § 9-21-6.
Deference to the Hearing Justice
The plaintiffs have continually alleged that the backlog in the probate clerk’s office was the reason for any delays in compliance with the statutory deadlines under § 33-23-1. We twice remanded this case to the Superior Court for the specific purposes of, first, an evidentiary hearing and, second, fact-finding and credibility assessments as to the veracity of plaintiffs’ allegations. Ultimately, the hearing justice found that plaintiffs could. have received a certified copy of the requested record had they simply been more diligent.
The majority acknowledges, that when this Court reviews “a ruling made by a hearing justice with respect to a motion in a civil case, this Court will ‘accord deferential consideration to the findings made by the hearing justice, and in the absence of our being able to determine that he [or she] was clearly wrong, or had misconceived or overlooked material evidence, we will not disturb his [or her] findings.’” BBS Citizens Bank, N.A. v. Issler, 21 A.3d 293, 297-98 (R.I.2011) (quoting City of Providence v. Employee Retirement Board of Providence, 749 A.2d 1088, 1093 (R.I.2000)). Nevertheless, the majority disregards much of the hearing justice’s findings of fact while seizing on other findings that are helpful to its narrative. The majority offers no explanation for why some facts are overlooked and, more importantly, why the hearing justice’s ultimate conclusion is discredited.
The majority has based its decision to overturn the hearing justice largely on the fact that “the cost of copying the Probate Court record was not sent to counsel for plaintiffs until one day. after the end of the [thirty-day window to appeal].” What the hearing justice concluded, and what the majority fails to explain away, is that the reason the Probate Court did not send the price quote to plaintiffs’ counsel until the thirty-first day was the inaction of plaintiffs. First, plaintiffs let seventeen of the thirty days pass before contacting the Probate Court to request a price quote for a copy of the certified record. And second, contrary to “the custom and practice of the Probate Court,” the hearing justice found that plaintiffs’ counsel failed to make any “efforts, written or oral, or visits to the probate clerk’s office as the appeal deadline approached to assure that the record would be transmitted in a timely fashion.” The plaintiffs’ inaction combined with the hearing justice’s finding that “[t]here is nothing * * * that would have prevented the Warwick Probate Court from complying with a timely request for copying the entire Scire Estate file” flies in the face of the majority’s conclusion that “[t]he delay in submitting the certified record was out of the control of the plaintiffs and their counsel.”
By deciding to overturn the Superior Court’s decision, the majority, I believe, has abandoned our precedent of deferring to the hearing justice and made the two *370 previous remands in this case nothing more than exercises in futility.
Relaxing the Excusable Neglect Standard
The majority points out that § 9-21-6 is a rule of equity. It is. I also recognize that this Court previously has stated that the addition of “excusable neglect” to the predecessor statute of § 9-21-6 “was intended to liberalize the remedial nature” of the statute. Steinhof v. Keefer, 101 R.I. 472, 475, 224 A.2d 897, 899 (1966). Nevertheless, we have recently reiterated that, under the statute, “[rjelief cannot be made available to one who has lost his [or her] appeal by reason of mistake of law or by an act of negligence or dereliction on his [or her] own part.” Carlson v. Bedford, 828 A.2d 516, 518 (R.I.2008) (mem.). Generally, “[t]he rule was not intended as an alternative method of appellate review, nor as a means of circumventing time limits on appeal * * *.” Id. (quoting Steinhof, 101 R.I. at 476, 224 A.2d at 899). Indeed, the party filing a motion under § 9-21-6 “has the burden of establishing one of the acceptable grounds for delay.” Kelley v. Jepson, 811 A.2d 119, 123 (R.I.2002). Further, “[t]he facts alleged must be sufficient to constitute one of these circumstances before the court can exercise its authority under the statute.” Carlson, 828 A.2d at 517. Such circumstances must be “compelling.” Steinhof, 101 R.I. at 477, 224 A.2d at 899.
The majority suggests that this dissent lacks fidelity to our precedent under § 9-21-6. However, the majority fails to acknowledge that we have never found it appropriate to grant relief on the grounds of excusable neglect under § 9-21-6. Furthermore, since the enactment of the current version of § 9-21-6, which vests discretion to grant relief in the Superior Court — as opposed to this Court, which the predecessor statute to § 9-21-6 did— we have never held that the Superior Court abused its discretion in denying relief.
Indeed, our task on appeal is not to decide what “justice requires” de novo, but rather, as our precedent informs us, to “review the Superior Court’s excusable-neglect determination for abuse of discretion.” UAG West Bay AM, LLC v. Cambio, 987 A.2d 873, 878 (R.I.2010) (quoting Friedman v. Lee Pare & Associates, Inc., 593 A.2d 1354, 1356 (R.I.1991)). The majority, despite recognizing this standard, is set on coming to a “just” determination. In doing so, the majority yearns to return to the time when the predecessor statute to § 9-21-6 vested discretion to grant relief with this Court.
It is clear that the Superior Court justice found that plaintiffs could have been more diligent. Excusable neglect must “not [be] in consequence of the party’s own carelessness, inattention, or willful disregard of the process of the court * * In re Kyla C., 79 A.3d 846, 848 (R.I.2013) (mem.) (quoting Small Business Loan Fund Corp. v. Gallant, 795 A.2d 531, 533 (R.I.2002)). Further, we have emphasized that “ ‘[e]xcusable neglect’ is a more rigorous standard than ‘good cause[.]’ ” Reyes v. Providence Place Group, L.L.C., 853 A.2d 1242, 1248 (R.I.2004) (quoting Daniel v. Cross, 749 A.2d 6, 9 (R.I.2000)). Accordingly, the determination that plaintiffs should have done more cuts sharply against the granting of relief on the grounds of excusable neglect. Cf. Ocean Road Partners v. State, 612 A.2d 1107, 1111 (R.I.1992) (recognizing that “granting of equitable relief is extraordinary relief and will not be applied unless the equities clearly must be balanced in favor of the party seeking that relief’). While the majority acknowledges that the existence of excusable neglect is a question of fact, it nonetheless disregards the factual deter- *371 ruinations and credibility assessments made by the hearing justice, to which we are to afford great weight and great deference. See JPL Livery Services, Inc. v. Rhode Island Department of Administration, 88 A.3d 1134, 1142 (R.I.2014) (quoting Cullen v. Tarini, 15 A.3d 968, 976 (R.I.2011)); Lamarque v. Centreville Savings Bank, 22 A.3d 1136, 1140 (R.I.2011). As a result, I believe that the majority’s opinion will greatly relax the excusable neglect standard, and that this relaxation is a mistake. ,
Shifting the Burden
Finally, the majority has shifted the burden of demonstrating entitlement to relief under § 9-21-6 away from plaintiffs to the nonparty Probate Court. Here, the Superior Court justice not only determined that there was more that plaintiffs could have done, he also made explicit factual findings and credibility determinations that ran contrary to plaintiffs’ assertions. On remand, the Superior Court justice held an additional hearing in which testimony was elicited from the administrator for the Probate Court and city clerk. Based on that hearing, the hearing justice subsequently made factual findings and credibility determinations which clearly found that the probate administrator and city clerk were credible and trustworthy and found that nothing would have prevented the Probate Court from complying with a timely request to copy the record.
Given the findings of the hearing justice, plaintiffs did not prove that they did everything that they could have done to satisfy the demands of § 33-23-1. Nevertheless, the majority finds that plaintiffs met the standard for excusable neglect. This can only be because the probate clerks did not prove to the satisfaction of the majority that they actually were able to produce the record in a timely fashion. I do not believe that the court clerks carry any burden to prove that they can do their job. Rather, I believe that plaintiffs must show that the clerks were unable to meet the demands of their employment, which they did not.
For the reasons articulated above, I respectfully, but vigorously register my dissent.