**Supreme Court**

No. 2011-119-Appeal.
No. 2011-156-Appeal.
(KP 11-28)

Joyce Duffy et al.                          :

v.                              :

Estate of Bartolomie Scire.          :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

**Supreme Court**

No. 2011-119-Appeal.
No. 2011-156-Appeal.
(KP 11-28)

Dissent begins on page 17

Joyce Duffy et al.          :

v.          :

Estate of Bartolomie Scire.          :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Robinson, for the Court.**  These consolidated appeals cause us to once again consider the sometimes stringent requirements for perfecting Probate Court appeals.  The appeals involve a petition filed by Joyce Duffy and Donna O'Reilly (plaintiffs) for the appointment of a guardian over their father, Bartolomie Scire (defendant or estate).[1]  After a judge of the Warwick Probate Court denied the petition, the plaintiffs appealed to the Superior Court for Kent County, where their complaint seeking review from the probate decision was dismissed.

This case came before the Supreme Court for oral argument on May 3, 2012, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After hearing the arguments of counsel and examining the

---

[1]    Due to the fact that, at one point in time, a temporary guardianship over Bartolomie Scire was ordered and then later vacated by the Probate Court, the caption retains the designation "Estate of Bartolomie Scire," and Mr. Scire is hereinafter referred to as defendant or estate.

- 1 -

memoranda filed by the parties, and following two remands for factual determinations, we are of the opinion that cause has not been shown. For the reasons indicated herein, we vacate the judgment of the Superior Court.

# I

## Facts and Travel

The pertinent facts and crucial dates are not in dispute. In February of 2009, plaintiffs filed a petition in the Warwick Probate Court for the appointment of a guardian over defendant. A temporary guardianship was granted on February 19, 2009, and the matter later proceeded to a hearing on April 29, 2010. At the hearing, testimony was taken and various records were submitted as exhibits. Thereafter, on December 13, 2010, the Probate Court issued a decision which, inter alia, granted defendant's motion to dismiss the temporary guardianship and denied plaintiffs' petition for the appointment of a permanent guardian.[2]

On December 30, 2010, plaintiffs filed a claim of appeal to the Superior Court with the Probate Court. Also on that date, plaintiffs wrote to the Probate Clerk requesting a certified copy of the claim and certified record of the proceedings appealed from, along with the cost of the certified documents. On January 3, 2011, plaintiffs' counsel wrote to opposing counsel seeking a stipulation of the probate record.[3]

On January 7, 2011, plaintiffs filed a complaint in the Kent County Superior Court appealing the decision of the Warwick Probate Court. Attached to the complaint were certified copies of the claim of appeal, the Probate Court decision and order, and a copy of the uncertified transcript of the April 29, 2010 Probate Court hearing. On that same day, plaintiffs filed a

---

[2]   It should be noted, however, that the Probate Court did grant a petition for the appointment of a conservator over defendant.

[3]   The plaintiffs indicate in their filings before this Court that no response was received.

- 2 -

motion in Superior Court to extend (for sixty days) the time for completion of the record of the probate appeal pursuant to G.L. 1956 § 33-23-1(c), as amended by P.L. 2007, ch. 257, § 2,[4] asserting that "the transcript of proceedings is not yet available." That motion was scheduled for hearing before the Superior Court on January 24, 2011. On January 20, 2011, defendant filed a motion to dismiss both plaintiffs' appeal and their motion to extend time for completion of the record of the probate appeal, claiming that plaintiffs had failed to perfect their appeal pursuant to § 33-23-1; additionally, defendant moved to affirm the Probate Court decision.

Also, on January 13, 2011, one day after the period to file the certified Probate Court record with the Superior Court expired—and apparently due to what plaintiffs' filings imply may have been a delay by the Probate Court Clerk's office[5]—the Probate Clerk wrote to plaintiffs' counsel advising him of the cost to copy the record and acknowledging receipt of plaintiffs' affidavit of proof of filing and docketing of the appeal in Superior Court. See § 33-23-1(a)(2). Payment for the copying costs was subsequently made on January 20, 2011.

Thereafter, a hearing was held in the Superior Court on January 24, 2011. At that hearing, defendant argued that failure to comply with the deadlines in subsections (a)(1) and

---

[4] General Laws 1956 § 33-23-1(c), as amended by P.L. 2007, ch. 257, § 2, provides:

> "If the appellant ordered the transcript or tape recording as the case may be from the probate clerk within the twenty (20) day deadline of subsection (a)(1) and the transcript is unavailable for filing within the thirty (30) day deadline of subsection (a)(2), the superior court on appellant's motion shall grant an extension of such additional time reasonably necessary to complete the record."

[5] One of the cases alleged to have caused the contended delay was In re Estate of Griggs— a case that has come before this Court on multiple occasions. See In re Estate of Griggs, 63 A.3d 867 (R.I. 2013) (Griggs II); Griggs v. Estate of Griggs, 845 A.2d 1006 (R.I. 2004) (Griggs I).

(a)(2) of § 33-23-1(a)[6] was jurisdictional based upon this Court's interpretation of the language in § 33-23-1(e).[7] In contrast, plaintiffs contended that an extension of time to transmit the Probate Court record was permitted under the circumstances. The hearing justice subsequently denied plaintiffs' motion to extend the time for filing the record and transcript and granted defendant's motion to dismiss the appeal, implicitly affirming the decision of the Probate Court. On February 2, 2011, after the entry of final judgment in accordance with Rule 54(b) of the Superior Court Rules of Civil Procedure, plaintiffs filed a timely notice of appeal to this Court.

Later, on March 14, 2011, pursuant to G.L. 1956 § 9-21-6, plaintiffs filed a motion in Superior Court arguing that the dismissal of the Probate Court appeal was improper since the delay in transmitting the Probate Court record was caused by the Probate Clerk in not preparing

---

[6]        Section 33-23-1(a) provides:

> "Any person aggrieved by an order or decree of a probate court (hereinafter 'appellant'), may, unless provisions be made to the contrary, appeal to the superior court for the county in which the probate court is established, by taking the following procedure:
> "(1) Within twenty (20) days after execution of the order or decree by the probate judge, the appellant shall file in the office of the clerk of the probate court a claim of appeal to the superior court and a request for a certified copy of the claim and the record of the proceedings appealed from, and shall pay the clerk his or her fees therefor.
> "(2) Within thirty (30) days after the entry of the order or decree, the appellant shall file in the superior court a certified copy of the claim and record and the reasons of appeal specifically stated, to which reasons the appellant shall be restricted, unless, for cause shown, and with or without terms, the superior court shall allow amendments and additions thereto." (Emphasis added.)

[7]        Section 33-23-1(e) provides in pertinent part as follows: "The deadline of subsections (a)(1) and (a)(2) of this chapter are jurisdictional * * * ."

the record on time.[8]  On March 22, 2011, plaintiffs moved in the Superior Court to extend the time for filing the transcript of the January 24, 2011 hearing pursuant to Article I, Rule 11(c) of the Supreme Court Rules of Appellate Procedure.  The defendant objected to both motions.  On March 28, 2011, finding that defendant had failed to offer evidence that the Probate Court was unable to produce the records and that plaintiffs' counsel should have been more assertive in seeking the records, the hearing justice denied both motions.  The plaintiffs timely appealed to this Court.

On June 14, 2012, this Court remanded the case back to the Superior Court for an evidentiary hearing regarding the issue of whether there was a backlog that existed at the time when plaintiffs were attempting to transmit the Probate Court record to the Superior Court for appeal.  On August 20, 2012, the case came before the same justice who had decided the matters on appeal from the Probate Court.  At the hearing, the Probate Clerk for Warwick and the Administrator for the Warwick Probate Court both testified that nothing would have prevented the Probate Court from complying with a timely request to copy the record.

On February 11, 2014, this Court once again remanded the case back to the Superior Court with the explicit directive to the hearing justice that he make findings of fact and credibility assessments of the witnesses who testified at the hearing on August 20, 2012.  On March 3, 2014, after the Superior Court established that the testimony of the Probate Clerk and

---

[8]    The motion was filed on a standard form used for stipulations, but it is apparent from both the text of the motion and the presence of only one signature, that of plaintiff's counsel, that the filing was intended as a motion.

Administrator given on August 20, 2012 was in fact credible, the case was returned to this Court.[9]

## II

### Standard of Review

We review matters of statutory interpretation and statutory construction de novo. Planned Environments Management Corp. v. Robert, 966 A.2d 117, 121 (R.I. 2009) ("[S]ince we have before us a pure statutory issue, we are mindful of the principle that questions about the meaning of statutes are reviewed de novo by this Court."). Moreover, "[i]t is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." Tanner v. Town Council of East Greenwich, 880 A.2d 784, 796 (R.I. 2005) (quoting Accent Store Design, Inc. v. Marathon House, Inc., 674 A.2d 1223, 1226 (R.I. 1996)). Additionally, "[t]his Court has recognized that § 33–23–1(e) requires strict compliance with the deadlines contained in § 33–23–1(a)." Ims v. Audette, 40 A.3d 236, 238 (R.I. 2012).

Further, "[w]hen we review the factual findings of a trial justice sitting without a jury, we accord those findings great deference." Lamarque v. Centreville Savings Bank, 22 A.3d 1136, 1140 (R.I. 2011). Likewise, "[w]e accord great weight to a trial justice's determinations of credibility, which, inherently, 'are the functions of the trial court and not the functions of the appellate court.'" JPL Livery Services, Inc. v. Rhode Island Department of Admininistration, 88 A.3d 1134, 1142 (R.I. 2014) (quoting Cullen v. Tarini, 15 A.3d 968, 976 (R.I. 2011)). Mixed questions of law and fact are reviewed with a similar deference. Providence Lodge No. 3,

---

[9] Later, on June 5, 2014, plaintiffs sought to remand the case back to the Superior Court for the appointment of a guardian over defendant. On September 22, 2014, we denied plaintiffs' petition to remand.

Fraternal Order of Police v. Providence External Review Authority, 951 A.2d 497, 502 (R.I. 2008).

III

Discussion

A

Compliance with § 33-23-1

From the outset, plaintiffs have asserted that they have attempted to comply with all aspects of § 33-23-1 that were within their control and, as such, their appeal should not have been dismissed by the Superior Court. The plaintiffs contend that the Probate Court Clerk's Office was to blame for any failure in adhering to statutory deadlines. Further, plaintiffs argue that they filed "substantial documentation" sufficient to enable the Superior Court to review the appeal. Accordingly, plaintiffs submit that they should have been granted an extension to transmit the record. The defendant disputes these assertions, suggesting that plaintiffs were "inattentive parties" who should not be afforded relief from the jurisdictional requirements of the statutory deadlines.

"We begin by observing that § 33–23–1(e) provides that: '[t]he deadline of subsections (a)(1) and (a)(2) * * * are jurisdictional and may not be extended by either the probate court or the superior court * * *.'" Ims, 40 A.3d at 238 (quoting § 33-23-1(e)). Indeed, we have repeatedly held that these deadlines are "'jurisdictional and failure to proceed within the time prescribed cannot be waived,' * * * nor can it be overlooked by a sympathetic trial justice." In re Estate of Speight, 739 A.2d 229, 231 (R.I. 1999) (quoting Yetner v. Corkery Genealogical, Inc., 706 A.2d 1331, 1332 (R.I. 1998) (mem.)); accord Ims, 40 A.3d at 238. Further, such provisions must be "strictly complied with." Dugdale v. Chase, 52 R.I. 63, 64, 157 A. 430, 431

- 7 -

(1931).  Additionally, "[s]ection 33-23-1(e) makes clear that subsection (c) is the sole exception for which extensions may be granted[.]"  Kelley v. Jepson, 811 A.2d 119, 123 (R.I. 2002) (emphasis added).

In an attempt to blunt the force of this clear mandate, plaintiffs point to our decision in Lett v. Giuliano, 35 A.3d 870 (R.I. 2012).  In Lett, 35 A.3d at 876, we held that the "failure to submit a single transcript of dubious relevance" did not warrant dismissal of a probate appeal "mid-trial, well past the eleventh hour."  Still, we made certain to contrast the circumstances in Lett "with our opinion in In re Estate of Tinney, 911 A.2d 272, 272 (R.I. 2006) (mem.), in which this Court held that the appealing party's failure to submit any transcripts to the Superior Court constituted fatal error."  Lett, 35 A.3d at 876.  Here, we note that the present case also involves a voluminous record of proceedings; however, it would be inaccurate to characterize plaintiffs' error as a simple "failure to submit a single transcript of dubious relevance."  Id.

Indeed, as the hearing justice astutely noted, the problem with plaintiffs' attempt to perfect its probate appeal "is not a transcript issue," but rather, it "[is] a record issue."  Section 33-23-1(b) makes clear that, separate and apart from transcripts, the record on appeal "shall include copies of documents filed with the probate court and full exhibits entered into evidence by the probate court as certified by the probate clerk which are relevant to the claim of appeal * * *."  The hearing justice was correct in determining that plaintiffs' mere references to exhibits that exist, without providing such, were insufficient to comply with the statute.  Additionally, plaintiffs' argument that they made a "good faith effort" to provide the complete record to the Superior Court within the time allotted by the statute must also fail because there is "no basis to recognize a good-faith defense to the jurisdictional prerequisites of the statute."  Ims, 40 A.3d at 238.

Previously, we issued an opinion in In re Estate of Griggs, 63 A.3d 867 (R.I. 2013) (Griggs II),[10] which arose out of an appeal from the Warwick Probate Court conducted by the same hearing justice involving issues similar to those in the present case. We reaffirmed that "[s]ection 33–23–l(b) should not be interpreted as a loophole allowing inattentive parties to perfect the appeal by initially supplying the court with a smattering of documents, then supplementing the record later in the proceedings." Griggs II, 63 A.3d at 871 (quoting Griggs v. Estate of Griggs, 845 A.2d 1006, 1010 (R.I. 2004) (Griggs I)). Likewise, in the instant case, because plaintiffs "failed to file a substantial portion of the record * * * [w]e discern no error in the trial justice's dismissal of the [plaintiff]s' appeals" pursuant to § 33-23-1(a) and (c). Griggs II, 63 A.3d at 871.[11]

## B

### Relief under § 9-21-6

After having their appeal foreclosed by the denial of their motion to extend on January 24, 2011, plaintiffs sought relief by filing a motion pursuant to § 9-21-6.

A hearing on this motion was conducted on March 28, 2011, before the same justice who heard plaintiffs' earlier motion. The justice heard arguments on the motion in conjunction with

---

[10] Ironically, the case referenced in the text involves the same Glenn Griggs whose case caused the contended delay at issue here. See footnote 5, supra.

[11] It should be noted that the General Assembly in the 2014 session eliminated the necessity of the appealing party filing the record within a thirty-day time frame in Probate Court appeals like the one at issue in the instant case. See P.L. 2014, ch. 550, § 1. However, since this act took effect upon its passage, it is not applicable to the matter before us. See State v. Healy, 122 R.I. 602, 606, 410 A.2d 432, 434 (1980) ("As a general rule a statute is presumed to operate prospectively and not retrospectively, unless it appears by clear, strong language or by necessary implication that the Legislature intended to give the statute retroactive force and effect.").

similar motions for the same relief, including motions regarding Griggs II.[12] The plaintiffs once again argued that the Probate Court Clerk's Office was the reason for any delays in compliance with the statutory deadlines. In response, defendant reiterated his position that plaintiffs had not done enough to timely acquire the record.

The hearing justice proceeded to review the materials and arguments of counsel. He ultimately found that plaintiffs had not offered any evidence that they made any efforts beyond their December 30, 2010 letter to guarantee that the record would be submitted in a timely manner; the hearing justice found that there was no evidence that, as the appeal deadline approached, plaintiffs made any efforts to visit the Probate Court Clerk's Office or in any other way contact the Probate Court Clerk's Office regarding the record in the instant case. Noting that the burden of establishing one of the acceptable grounds for relief under the statute was on plaintiffs, the hearing justice declined to grant plaintiffs relief under § 9-21-6.

It is our opinion, after careful consideration, that the hearing justice's decision was in error. Moreover, it is our firm conviction that excusable neglect was present in the instant case and, consequently, the appeal should have proceeded under § 9-21-6.

This Court has made it clear that "[t]he only remedy available to one who has not filed within the prescribed period [under § 33-23-1] is to file a petition to the Superior Court pursuant to § 9-21-6." Kelley, 811 A.2d at 123; see also Estate of Speight, 739 A.2d at 231. Section 9-21-6 provides as follows:

> "When any person is aggrieved by an order, decree, decision, or judgment of the district court or of any probate court or town council from which an appeal or other review is available in the superior court and, because of accident, mistake, unforeseen

_____

[12]     We note that, in Warwick, after the then-Probate Judge was appointed to the District Court, he filed decisions in several cases on December 13, 2010 in winding up his Probate Court duties.

- 10 -

cause, or excusable neglect has failed to claim his or her appeal, the superior court, if it appears that justice so requires, may, upon petition filed within ninety (90) days after the entry of the order, decree, decision, or judgment, allow an appeal to be taken and prosecuted upon such terms and conditions as the court may prescribe." (Emphasis added.)

The party who files a § 9-21-6 petition "has the burden of establishing one of the acceptable grounds for delay," and the facts which are alleged must be sufficient to constitute one of those acceptable grounds for delay before a court can exercise its authority under § 9-21-6. Carlson v. Bedford, 828 A.2d 516, 517 (R.I. 2003) (mem.) (internal quotation marks omitted); Ring v. Ring, 97 R.I. 509, 510, 199 A.2d 124, 126 (1964) ("[The] grounds for the relief prescribed by the statute have been held to be conditions precedent to an exercise of the authority by [the] court."). We also recognize that this Court has held that § 9-21-6 "was not intended as an alternative method of appellate review, nor as a means of circumventing time limits on appeal, except where compelling considerations of justice require that course;" the statute was not designed to "assist one who slumbers on his rights without just cause." Steinhof v. Keefer, 101 R.I. 472, 476, 224 A.2d 897, 899 (1966) (internal quotation marks omitted); MacNeil v. Morgan, 73 R.I. 165, 169, 54 A.2d 409, 411 (1947).

At the same time, however, it is crucially important to keep in mind that § 9-21-6 is remedial and should be liberally construed; this Court has expressly stated that the inclusion of "excusable neglect" in § 9-21-6 "was intended to liberalize the remedial nature" of the statute. Steinhof, 101 R.I. at 475, 224 A.2d at 899. When liberally construing § 9-21-6, we reach the conclusion that plaintiffs in this case have met their burden of establishing excusable neglect and cannot fairly be said to have slumbered on their rights. Indeed, we are convinced that justice requires that plaintiffs be given the opportunity to have a hearing on the merits in the instant case.

- 11 -

In order to explain our conviction that plaintiffs' arguable failure to have met the strictures of § 33-23-1 in this case was the result of excusable neglect, it is necessary to begin with a discussion of this Court's jurisprudence with respect to that doctrine. We have adopted the definition of excusable neglect set forth in Black's Law Dictionary and defined it as:

> "[A] failure to take the proper steps at the proper time, not in consequence of the party's own carelessness, inattention, or willful disregard of the process of the court, but in consequence of some unexpected or unavoidable hindrance or accident, or reliance on the care and vigilance of his counsel or on promises made by the adverse party." Astors' Beechwood v. People Coal Co., 659 A.2d 1109, 1115 (R.I. 1995) (quoting Black's Law Dictionary 566 (6th ed. 1990)).

The existence of excusable neglect (vel non) is a question of fact which must be determined on the basis of the evidence. Pleasant Management, LLC v. Carrasco, 960 A.2d 216, 222 (R.I. 2008); see also Iddings v. McBurney, 657 A.2d 550, 553 (R.I. 1995). When determining whether or not the evidence in a particular case indicates that the conduct at issue amounts to excusable neglect, this Court asks whether what transpired was a "course of conduct that a reasonably prudent person would have taken under similar circumstances." Boranian v. Richer, 983 A.2d 834, 839 (R.I. 2009) (internal quotation marks omitted); see also Reyes v. Providence Place Group, L.L.C., 853 A.2d 1242, 1248 (R.I. 2004). Some factors which we have considered in this regard include the length of the delay, its impact on the proceedings, whether the movant acted in good faith—and, importantly, whether the reason for the delay "was within the reasonable control of the movant." Boranian, 983 A.2d at 839 (internal quotation marks omitted); see also Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership, 507 U.S. 380, 395 (1993). We also note that this Court has held that "[e]xcusable neglect should be interpreted flexibly," because "[t]he determination of excusable neglect is at bottom an equitable one, taking account of all relevant circumstances * * * ." Pleasant Management, LLC,

- 12 -

960 A.2d at 225 (internal quotation marks omitted); see also Pioneer Investment Services Co., 507 U.S. at 395.

In the instant case, the hearing justice ruled that the fact that a statement as to the cost of copying the Probate Court record was not sent to counsel for plaintiffs until one day after the end of the appeal period relative to the December 13, 2010 Probate Court decision was an insufficient basis for relief under § 9-21-6. In our opinion, the hearing justice erred in so ruling and in his ultimate determination that plaintiffs' appeal, consequently, could not proceed under § 9-21-6.

Even accepting without quibble the findings of fact and the credibility assessments of the hearing justice, it is troubling that the letter from the Probate Court setting forth the cost of copying the certified record was not sent to counsel for plaintiffs until after the due date for submitting the Probate Court record to the Superior Court (January 12, 2011) had come and gone. That uncontested fact is significantly troubling when one remembers that the cost of copying the certified record had been properly and timely requested by plaintiffs' counsel in writing. On December 30, 2010, counsel for plaintiffs sent a letter to Ms. Judy Wild, the Administrator of the Probate Court. It is entirely clear from the face of the letter that what was explicitly requested was "a certified record of the proceedings appealed from." The letter from plaintiffs' counsel went on to state: "Please advise what the cost of these certified documents is and a check will be forwarded to your office." The cost for the "certified documents," which included the certified record, was not sent to plaintiffs' counsel until January 13, 2011—two weeks after the written request of December 30, 2010. Ms. Wild's testimony reflects that it was her understanding that the usual practice was that, after an initial request for records was made, a requesting party would have to engage in "recontact with someone" in her office in order to

ultimately communicate to Ms. Wild that "the parties ha[d] agreed to specific parts of the case or [that] they want[ed] the whole file."[13] However, such "recontact" was certainly not necessary in this case since the December 30 letter had, without any sort of qualifying language, requested the entire "certified record of the proceedings appealed from."

It is jurisprudentially important to bear in mind the maxim that "[r]ules of law are rarely as clean and strict as statements of them make them seem." AM International, Inc. v. Graphic Management Associates, Inc., 44 F.3d 572, 575 (7th Cir. 1995) (Posner, C.J.). We have instructed that § 9-21-6 is to be interpreted liberally, and we have stated that determinations of excusable neglect are equitable in nature. See Pleasant Management, LLC, 960 A.2d at 225; Ring, 97 R.I. at 511-12, 199 A.2d at 126. Based on this Court's clear precedent and the facts of the instant case, it is our judgment that allowing plaintiffs to have a hearing on the merits in Superior Court constitutes a genuinely equitable result. The delay in submitting the certified record was out of the control of plaintiffs and their counsel; it took the Probate Court Clerk's Office two weeks to respond to a letter specifically requesting both a copy of the entire certified record and a statement as to the costs of the record—which two week lag must be viewed in light of the testimony by Ms. Wild that a record of about the length of the one in the instant case could be copied in a day. Moreover, it is clear from the record that plaintiffs' counsel would not have been permitted to make the copies of the record himself. See Boranian, 983 A.2d at 839 (stating that one of the factors to be considered when addressing excusable neglect is whether the delay was "within the reasonable control" of the moving party). The plaintiffs' counsel made a clear and explicit request for a copy of the record; no reasonable person need have done more,

---

[13] It is noteworthy that the usual practice about which Ms. Wild testified is not mandated by any statute, ordinance, or regulation.

regardless of what, according to her testimony, Ms. Wild considered to be the usual practice. See id.

We add that our conviction that equity militates in plaintiffs' favor is reinforced by the fact that the circumstances of this case parallel those in other cases where this Court has held that there was excusable neglect; in the instant case, as in those other cases, it was not the fault of plaintiffs or their counsel that caused their non-adherence to the January 12, 2011 filing deadline. See, e.g., Pleasant Management, LLC, 960 A.2d at 225 (holding that there was excusable neglect when an attorney contacted an opposing party—one of the defendants in the case—rather than that party's attorney, and told that defendant to "forget about court," ultimately causing a default decree to be entered against the defendants when they failed to appear at a hearing); Gardner v. Baird, 871 A.2d 949, 952-53 (R.I. 2005) (holding that the plaintiffs' failure to pay appellate court fees, which failure was recognized and corrected before the hearing date, constituted excusable neglect); State v. Dominguez, 679 A.2d 873, 874-75 (R.I. 1996) (holding that there was excusable neglect when a defendant missed a filing deadline because an attorney had not been appointed for him until after the deadline).

We further note that this Court's cases in which we held that there was no excusable neglect dealt with situations more within the parties' control than is true with respect to the present appeal, such as instances where a pro se litigant lacked knowledge of a filing deadline or where an attorney had a busy schedule. See Jacksonbay Builders, Inc. v. Azarmi, 869 A.2d 580, 584 (R.I. 2005) (holding that a pro se litigant's lack of knowledge of a deadline did not constitute excusable neglect); Astors' Beechwood, 659 A.2d at 1115 (holding that an attorney's busy schedule did not warrant a finding of excusable neglect); see also UAG West Bay AM, LLC v. Cambio, 987 A.2d 873, 881 (R.I. 2010) (holding that missing a filing deadline due to the fact that

the attorney did not adequately supervise his associate because the supervising attorney was very busy did not constitute excusable neglect); <u>Coutu v. Porter</u>, 744 A.2d 405, 406 (R.I. 1999) (mem.) (holding that an attorney's failure to file a rejection of an arbitration award because he was waiting for a copy of the award to arrive in the mail was not excusable neglect).

As such, our respect for precedent and consistency causes us to conclude that, based on the failure of the Probate Court Clerk's Office to respond to the December 30 letter in a timely manner, the circumstances of this case constitute a "failure to take the proper steps at the proper time, not in consequence of the party's own carelessness, inattention, or willful disregard of the process of the court, but in consequence of some unexpected or unavoidable hindrance * * * ." <u>Boranian</u>, 983 A.2d at 838. Accordingly, we hold that the plaintiffs' failure to have satisfied the requirements of § 33-23-1(a) constituted excusable neglect and that, therefore, justice requires that the plaintiffs' appeal be allowed to proceed under § 9-21-6; the plaintiffs should have their day in Court. In our judgment, allowing the instant appeal to proceed on its merits would be entirely consistent with the spirit which animates the Superior Court Rules of Civil Procedure. We point especially to Rule 1 of the Superior Court Rules of Civil Procedure, which states that the rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." <u>See</u> <u>Sarni v. Meloccaro</u>, 113 R.I. 630, 636, 324 A.2d 648, 652 (1974). Accordingly, it is our view that a "just" determination of this action can be achieved only by allowing the appeal to be heard on its merits pursuant to § 9-21-6.

## IV

## Conclusion

For the reasons set forth in this opinion, we vacate the decision of the Superior Court that the instant case could not proceed under the terms of § 9-21-6, and we remand the record in this case to that tribunal for a hearing on the merits.

**Justice Indeglia, with whom Justice Flaherty joins, dissenting.** Although I agree with the majority's analysis and holding regarding G.L. 1956 § 33-23-1, I disagree with that portion of its opinion pertaining to G.L. 1956 § 9-21-6. I do so for three reasons. First, I believe that the majority abandoned our precedent of deferring to the hearing justice's fact-finding determinations. Second, under the majority's opinion, the standard of excusable neglect will be greatly relaxed. And third, I believe that the majority incorrectly shifted the burden of proof under § 9-21-6.

## Deference to the Hearing Justice

The plaintiffs have continually alleged that the backlog in the probate clerk's office was the reason for any delays in compliance with the statutory deadlines under § 33-23-1. We twice remanded this case to the Superior Court for the specific purposes of, first, an evidentiary hearing and, second, fact-finding and credibility assessments as to the veracity of plaintiffs' allegations. Ultimately, the hearing justice found that plaintiffs could have received a certified copy of the requested record had they simply been more diligent.

The majority acknowledges, that when this Court reviews "a ruling made by a hearing justice with respect to a motion in a civil case, this Court will 'accord deferential consideration to the findings made by the hearing justice, and in the absence of our being able to determine that

he [or she] was clearly wrong, or had misconceived or overlooked material evidence, we will not disturb his [or her] findings.'" RBS Citizens Bank, N.A. v. Issler, 21 A.3d 293, 297-98 (R.I. 2011) (quoting City of Providence v. Employee Retirement Board of Providence, 749 A.2d 1088, 1093 (R.I. 2000)). Nevertheless, the majority disregards much of the hearing justice's findings of fact while seizing on other findings that are helpful to its narrative. The majority offers no explanation for why some facts are overlooked and, more importantly, why the hearing justice's ultimate conclusion is discredited.

The majority has based its decision to overturn the hearing justice largely on the fact that "the cost of copying the Probate Court record was not sent to counsel for plaintiffs until one day after the end of the [thirty-day window to appeal]." What the hearing justice concluded, and what the majority fails to explain away, is that the reason the Probate Court did not send the price quote to plaintiffs' counsel until the thirty-first day was the inaction of plaintiffs. First, plaintiffs let seventeen of the thirty days pass before contacting the Probate Court to request a price quote for a copy of the certified record. And second, contrary to "the custom and practice of the Probate Court," the hearing justice found that plaintiffs' counsel failed to make any "efforts, written or oral, or visits to the probate clerk's office as the appeal deadline approached to assure that the record would be transmitted in a timely fashion." The plaintiffs' inaction combined with the hearing justice's finding that "[t]here is nothing * * * that would have prevented the Warwick Probate Court from complying with a timely request for copying the entire Scire Estate file" flies in the face of the majority's conclusion that "[t]he delay in submitting the certified record was out of the control of the plaintiffs and their counsel."

By deciding to overturn the Superior Court's decision, the majority, I believe, has abandoned our precedent of deferring to the hearing justice and made the two previous remands in this case nothing more than exercises in futility.

## Relaxing the Excusable Neglect Standard

The majority points out that § 9-21-6 is a rule of equity. It is. I also recognize that this Court previously has stated that the addition of "excusable neglect" to the predecessor statute of § 9-21-6 "was intended to liberalize the remedial nature" of the statute. Steinhof v. Keefer, 101 R.I. 472, 475, 224 A.2d 897, 899 (1966). Nevertheless, we have recently reiterated that, under the statute, "[r]elief cannot be made available to one who has lost his [or her] appeal by reason of mistake of law or by an act of negligence or dereliction on his [or her] own part." Carlson v. Bedford, 828 A.2d 516, 518 (R.I. 2003) (mem.). Generally, "[t]he rule was not intended as an alternative method of appellate review, nor as a means of circumventing time limits on appeal * * *." Id. (quoting Steinhof, 101 R.I. at 476, 224 A.2d at 899). Indeed, the party filing a motion under § 9-21-6 "has the burden of establishing one of the acceptable grounds for delay." Kelley v. Jepson, 811 A.2d 119, 123 (R.I. 2002). Further, "[t]he facts alleged must be sufficient to constitute one of these circumstances before the court can exercise its authority under the statute." Carlson, 828 A.2d at 517. Such circumstances must be "compelling." Steinhof, 101 R.I. at 477, 224 A.2d at 899.

The majority suggests that this dissent lacks fidelity to our precedent under § 9-21-6. However, the majority fails to acknowledge that we have never found it appropriate to grant relief on the grounds of excusable neglect under § 9-21-6. Furthermore, since the enactment of the current version of § 9-21-6, which vests discretion to grant relief in the Superior Court—as

- 19 -

opposed to this Court, which the predecessor statute to § 9-21-6 did—we have never held that the Superior Court abused its discretion in denying relief.

Indeed, our task on appeal is not to decide what "justice requires" de novo, but rather, as our precedent informs us, to "review the Superior Court's excusable-neglect determination for abuse of discretion." UAG West Bay AM, LLC v. Cambio, 987 A.2d 873, 878 (R.I. 2010) (quoting Friedman v. Lee Pare & Associates, Inc., 593 A.2d 1354, 1356 (R.I. 1991)). The majority, despite recognizing this standard, is set on coming to a "just" determination. In doing so, the majority yearns to return to the time when the predecessor statute to § 9-21-6 vested discretion to grant relief with this Court.

It is clear that the Superior Court justice found that plaintiffs could have been more diligent. Excusable neglect must "not [be] in consequence of the party's own carelessness, inattention, or willful disregard of the process of the court * * *." In re Kyla C., 79 A.3d 846, 848 (R.I. 2013) (mem.) (quoting Small Business Loan Fund Corp. v. Gallant, 795 A.2d 531, 533 (R.I. 2002)). Further, we have emphasized that "'[e]xcusable neglect' is a more rigorous standard than 'good cause[.]'" Reyes v. Providence Place Group, L.L.C., 853 A.2d 1242, 1248 (R.I. 2004) (quoting Daniel v. Cross, 749 A.2d 6, 9 (R.I. 2000)). Accordingly, the determination that plaintiffs should have done more cuts sharply against the granting of relief on the grounds of excusable neglect. Cf. Ocean Road Partners v. State, 612 A.2d 1107, 1111 (R.I. 1992) (recognizing that "granting of equitable relief is extraordinary relief and will not be applied unless the equities clearly must be balanced in favor of the party seeking that relief"). While the majority acknowledges that the existence of excusable neglect is a question of fact, it nonetheless disregards the factual determinations and credibility assessments made by the hearing justice, to which we are to afford great weight and great deference. See JPL Livery Services, Inc. v. Rhode

- 20 -

Island Department of Administration, 88 A.3d 1134, 1142 (R.I. 2014) (quoting Cullen v. Tarini, 15 A.3d 968, 976 (R.I. 2011)); Lamarque v. Centreville Savings Bank, 22 A.3d 1136, 1140 (R.I. 2011). As a result, I believe that the majority's opinion will greatly relax the excusable neglect standard, and that this relaxation is a mistake.

**Shifting the Burden**

Finally, the majority has shifted the burden of demonstrating entitlement to relief under § 9-21-6 away from plaintiffs to the nonparty Probate Court. Here, the Superior Court justice not only determined that there was more that plaintiffs could have done, he also made explicit factual findings and credibility determinations that ran contrary to plaintiffs' assertions. On remand, the Superior Court justice held an additional hearing in which testimony was elicited from the administrator for the Probate Court and city clerk. Based on that hearing, the hearing justice subsequently made factual findings and credibility determinations which clearly found that the probate administrator and city clerk were credible and trustworthy and found that nothing would have prevented the Probate Court from complying with a timely request to copy the record.

Given the findings of the hearing justice, plaintiffs did not prove that they did everything that they could have done to satisfy the demands of § 33-23-1. Nevertheless, the majority finds that plaintiffs met the standard for excusable neglect. This can only be because the probate clerks did not prove to the satisfaction of the majority that they actually were able to produce the record in a timely fashion. I do not believe that the court clerks carry any burden to prove that they can do their job. Rather, I believe that plaintiffs must show that the clerks were unable to meet the demands of their employment, which they did not.

For the reasons articulated above, I respectfully, but vigorously register my dissent.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**      Joyce Duffy et al. v. Estate of Bartolomie Scire.

**CASE NO:**             No. 2011-119-Appeal.
                        No. 2011-156-Appeal.
                        (KP 11-28)

**COURT:**               Supreme Court

**DATE OPINION FILED:**  April 1, 2015

**JUSTICES:**            Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**          Associate Justice William P. Robinson III

**SOURCE OF APPEAL:**    Kent County Superior Court

**JUDGE FROM LOWER COURT**:

                        Associate Justice Daniel A. Procaccini

**ATTORNEYS ON APPEAL:**

                        For Plaintiffs:  Michael J. McCaffrey, Esq.

                        For Defendant:  J. Richard Ratcliffe,  Esq.