**Supreme Court**

No. 2015-132-Appeal.
No. 2015-133-Appeal.
(PC 08-3644)

James F. Nuzzo          :

v.          :

Nuzzo Campion Stone Enterprises, Inc.    :
     f/k/a/ Corriveault Holdings, Inc.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

**Supreme Court**

No. 2015-132-Appeal.
No. 2015-133-Appeal.
(PC 08-3644)

James F. Nuzzo         :

v.         :

Nuzzo Campion Stone Enterprises, Inc.   :
    f/k/a Corriveault Holdings, Inc.

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Robinson, for the Court.** The plaintiff, James F. Nuzzo, appeals to the Supreme Court from a judgment of the Providence County Superior Court. At issue in the jury-waived trial were a number of disputes between the parties that arose after the defendant corporation, Nuzzo Campion Stone Enterprises, Inc. (NCS), was purchased by its present owner.[1] After a two-day trial and after addressing various post-trial submissions, the trial justice held that Mr. Nuzzo was not entitled to commissions on orders that had been placed prior to his termination, but not actually paid for by customers of NCS until after his termination. The trial justice further held that NCS, as counterclaimant, was due $16,898.20 for both "work in progress" and warranty work pursuant to the Asset Purchase Agreement signed by the parties.[2] Mr. Nuzzo contends that the trial justice erred in determining that he was not entitled to commissions for orders that had been placed, but not actually paid for, prior to his termination. He also contends that the trial

---

[1]    James F. Nuzzo and Rita Campion (his wife) were shareholders of NCS until its sale in October of 2006 to its present owner.

[2]    The relevant language of the Asset Purchase Agreement is quoted verbatim in the Facts and Travel section of this opinion, infra.

justice erred in awarding NCS $16,898.20 on its counterclaim. This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After a close review of the record and careful consideration of the parties' arguments (both written and oral), we are satisfied that cause has not been shown and that this appeal may be decided at this time.

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

# I

## Facts and Travel

On May 23, 2008, plaintiff filed a complaint, in which he alleged that he was owed a total of $133,816 in unpaid commissions and severance pay in accordance with his understanding of the Sales Commission Agreement signed by the parties.[3] He contended that he had earned sales commissions in the amount of $119,663. He acknowledged that NCS had already paid him $15,761 in commissions, leaving $103,901 in allegedly unpaid sales commissions. In addition, he alleged that NCS owed him a severance payment of twenty-five percent of the commissions allegedly due to him, which would amount to $29,915.[4]

In its answer, the defendant corporation denied that it owed Mr. Nuzzo the sales commissions that he alleged were due to him; and it filed a counterclaim for breach of contract, alleging that plaintiff had failed to indemnify NCS for certain amounts covered by the terms of the Asset Purchase Agreement.

---

[3] The relevant sections of the document known as the "Sales Commission Agreement" are quoted, infra.

[4] The plaintiff focuses his contentions on appeal on the commissions that he claims he is due. We note that, if he were awarded those commissions, he would be entitled to an additional severance payment as a percentage of those commissions.

On February 4, 2013, the parties entered into a "Statement of Agreed Facts," in which they stipulated to the following pertinent facts: (1) that plaintiff formerly owned and operated the defendant corporation, which sold stone and tile; (2) that plaintiff and Rita Campion (plaintiff's wife) were shareholders of the defendant corporation until it was sold in October of 2006 pursuant to the terms of the document referred to as the Asset Purchase Agreement; (3) that, in connection with the sale, plaintiff entered into the Sales Commission Agreement; (4) that plaintiff developed and procured sales for the defendant corporation from November of 2006 until he was terminated on April 30, 2007; (5) that the sales that occurred between the sale of the defendant corporation and plaintiff's termination amounted to $1,120,766; and (6) that plaintiff had received $15,761 in compensation in connection with those sales.

Reduced to its essentials, this case centers around a dispute concerning two documents signed by the parties—viz., the Sales Commission Agreement and the Asset Purchase Agreement. The Sales Commission Agreement was admitted as a full exhibit at trial. The relevant portions of that document (contained in sections 6(a) and 6(b)) read as follows:

> "**6. Compensation. (a) General Sales.** * * * Commissions shall be deemed to have been earned when an order is paid in full, unless otherwise agreed between the parties.
>
> "* * *
>
> "**(b) Material Tile Sales.** * * * Tile commission payments shall be deemed to have been earned when an order is paid in full, unless otherwise agreed between the parties."

The Asset Purchase Agreement was also admitted as a full exhibit at trial. The relevant portion of that document (contained in Article IV, Section 4.5(c)) reads in pertinent part as follows:

> "Buyer shall complete performance of each Contract identified on Exhibit B required to be completed after the Closing Date for the account of the Sellers, provided that Seller shall indemnify Buyer

for such costs as are incurred in connection with the performance of any such Contract obligation after the closing date * * *."[5]

On February 4 and 5 of 2013, a jury-waived trial was held. Mr. Nuzzo and David Corriveault, the present owner of NCS, testified at trial.

### A

### The Trial Court's Decision

On May 29, 2013, the trial justice issued a written decision addressing the commissions due to Mr. Nuzzo, the severance pay due to Mr. Nuzzo, and NCS's counterclaim against Mr. Nuzzo. Thereafter, the defendant corporation filed a motion contending that the discussion of the counterclaim in the trial justice's decision erroneously focused on the Sales Commission Agreement rather than the Asset Purchase Agreement. After conducting a hearing with respect to that contention, the trial justice vacated his initial decision in its entirety. Subsequently, after entertaining further argument, he issued a revised decision on January 2, 2014, in which he considered the counterclaim issues in light of the Asset Purchase Agreement and not the Sales Commission Agreement. (The revised decision is essentially identical to the initial decision in all other respects.) In the discussion that follows, we shall limit our attention to the revised decision.

In the revised decision, the trial justice first addressed plaintiff's contentions concerning commissions and severance. With respect to plaintiff's claim for commissions that he alleged were due to him from sales placed, but not actually paid for by the defendant corporation's customers, prior to plaintiff's termination, the trial justice concluded that plaintiff had not

---

[5] The "closing date" that is mentioned in the language from the Asset Purchase Agreement quoted in the text refers to the sale of the defendant corporation that, according to the Statement of Agreed Facts, took place in October of 2006.

established that he was owed any commissions from sales falling into that category. The trial justice found the Sales Commission Agreement to be "clear on its face and unambiguous," and he read it as providing (in his words) that a "commission is only due and earned when the customer pays for the order." (Emphasis in original.) The trial justice further noted that, pursuant to that Agreement, "no commission is due when a sale is worked up, and a customer is tended to, or even when an order is placed." As such, the trial justice ruled that Mr. Nuzzo was not entitled to the commissions that he was seeking.[6] As to the severance pay that plaintiff claimed was due to him (calculated as a percentage of commissions on orders paid for after his termination), the trial justice determined that plaintiff had not "submitted sufficient proof * * * to substantiate the amount of severance he claims."[7]

Additionally, the trial justice concluded that the defendant corporation was due $16,898.20 in reimbursement costs on its counterclaim pursuant to Article IV, Section 4.5(c) of the Asset Purchase Agreement (a completely different document from the one relied upon in the initial decision), which provides that plaintiff shall indemnify the defendant corporation for the costs incurred in connection with "work in progress"[8] and warranty work. The trial justice noted that "there was no real dispute that Mr. Nuzzo executed this indemnification and that the indemnification is enforceable." Additionally, the trial justice stated that the defendant

---

[6] As for commissions that were not barred by the Sales Commission Agreement, the trial justice stated that plaintiff was due $28,691.02—an amount which the defendant corporation does not contest on appeal.

[7] The trial justice noted that plaintiff was owed $7,176.76 in unpaid severance (being a percentage of the $28,691.02 in commissions undisputedly due to plaintiff)—an amount which the defendant corporation once again does not contest on appeal.

[8] According to the Statement of Agreed Facts, it is undisputed that the terms "work in progress" and "jobs in process" refer to jobs that were underway, but had not yet been completed at the time of the sale of NCS.

corporation "performed work and satisfied customer orders, obligations and commitments for ongoing work and for warranty work" and that invoices reflecting those charges were then provided to Mr. Nuzzo. The trial justice further stated that a balance of $16,898.20 remained due to the defendant corporation from plaintiff pursuant to the terms of the Asset Purchase Agreement. The trial justice noted that Mr. Corriveault, the present owner of the defendant corporation, testified concerning the services performed and submitted invoices for the "work in progress," which Mr. Nuzzo never established were inaccurate. Furthermore, the trial justice determined that the testimony of Mr. Corriveault as well as the submitted invoices, were "clear, rational, reliable, comprehensive and highly persuasive." Accordingly, the trial justice determined that "indemnification [was] reasonable and appropriate."

Judgment entered on July 2, 2014 in accordance with the trial justice's decision.

## II

## Issues on Appeal

The plaintiff contends: (1) that the trial justice erred in determining that plaintiff was not entitled to commissions on those orders which had been placed prior to his termination, but for which payment was actually made after the date of his termination; and (2) that the trial justice made "fundamental mistakes regarding the contract and damages" relating to the counterclaim and that plaintiff was consequently entitled to a new trial.

## III

## Standard of Review

It is well established that this Court applies a "deferential standard of review with respect to the factual findings of a trial justice sitting without a jury in a civil case." B.S. International Ltd. v. JMAM, LLC, 13 A.3d 1057, 1062 (R.I. 2011); see also Duffy v. Estate of Scire, 111 A.3d

358, 363 (R.I. 2015). Accordingly, this Court will not disturb factual findings "unless the record shows that the findings are clearly wrong or unless the trial justice overlooked or misconceived material evidence on a controlling issue." B.S. International Ltd., 13 A.3d at 1062 (internal quotation marks omitted). It is also a basic principle in this context that "[i]f, as we review the record, it becomes clear to us that the record indicates that competent evidence supports the trial justice's findings, we shall not substitute our view of the evidence for his [or hers] even though a contrary conclusion could have been reached." Carrozza v. Voccola, 90 A.3d 142, 151 (R.I. 2014) (internal quotation marks omitted).

It is axiomatic that the "interpretation of an unambiguous contract is a question of law." B.S. International Ltd., 13 A.3d at 1063. Accordingly, since it is not contended that the contractual language at issue is ambiguous, we shall review in a de novo manner the trial court's reading of the unambiguous contractual language at issue. Id. In doing so, we shall bear in mind that, "[w]hen contract language is clear and unambiguous, words contained therein will be given their usual and ordinary meaning and the parties will be bound by such meaning." DiPaola v. DiPaola, 16 A.3d 571, 576 (R.I. 2011) (internal quotation marks omitted). In such cases, a contract's "meaning should be determined without reference to extrinsic facts or aids." JPL Livery Services, Inc. v. Rhode Island Department of Administration, 88 A.3d 1134, 1142 (R.I. 2014) (internal quotation marks omitted).

Analysis

A

**The Commissions**

The plaintiff contends that the trial justice erred in interpreting the language in the Sales Commission Agreement as providing that plaintiff was not entitled to commissions on orders placed before his termination, but not actually paid for until after plaintiff's termination. The trial justice determined that sections 6(a) and 6(b) of the Sales Commission Agreement, which pertain to commissions, are unambiguous; accordingly, he applied those sections to the agreed-upon facts. The trial justice noted that the two just-referenced sections of the Sales Commission Agreement both explicitly provide that the commissions at issue "shall be deemed to have been earned <u>when</u> <u>an</u> <u>order</u> <u>is</u> <u>paid</u> <u>in</u> <u>full</u> * * *." (Emphasis added.) The trial justice concluded that that language clearly provides that "[a] commission is only due and earned when the customer <u>pays</u> <u>for</u> the order." (Emphasis in original.) After a thorough review of the record and the pertinent agreement, we perceive no error in the trial justice's reasoning in that regard.

In connection with his claimed entitlement to commissions, plaintiff further contends that he falls within the general rule laid out in <u>Oken v. National Chain Co.</u>, 424 A.2d 234, 235 (R.I. 1981). In <u>Oken</u>, the Court stated: "As a general rule, a person employed on a commission basis to solicit sales orders earns or is entitled to his commission when the order is accepted by his employer." <u>Id.</u> Significantly, however, the Court in <u>Oken</u> proceeded to indicate that the general rule is not absolute; the Court specifically indicated that the general rule "may be altered by a written agreement by * * * the parties which clearly demonstrates a different compensation scheme." <u>Id.</u> After focusing on the explicit language of the signed Sales Commission

Agreement, the trial justice stated: "The contract is clear: he is not entitled to [the] commissions [he is seeking]. * * * Mr. Nuzzo has not established that Nuzzo Campion Stone Enterprises, Inc. breached the contract." Having reviewed the language of the Sales Commission Agreement, we understand it to reflect the sort of departure from the general rule "by a written agreement" that this Court in Oken specifically indicated was permissible.[9] Id. Accordingly, we are in full agreement with the trial justice that plaintiff's breach of contract claim for commissions on orders placed before plaintiff was terminated but paid for by customers after his termination is meritless.[10]

**B**

**The Counterclaim**

Turning next to the plaintiff's challenge to the award of damages under the counterclaim, we note that the "Argument" section of the plaintiff's submission to this Court devotes a total of four short sentences to the counterclaim issue, and he completely fails to direct us to what he considers to be erroneous in the trial justice's findings and conclusions as set forth in the revised decision. Instead, he simply expresses his displeasure over the fact that the trial justice issued a

---

[9]    One may question the wisdom of plaintiff's decision to agree to the quoted provisions of the Sales Commission Agreement. But the plain, blunt fact is that he did agree to the terms of that written contract, and he is therefore subject to those terms. See Sophie F. Bronowiski Mulligan Irrevocable Trust v. Bridges, 44 A.3d 116, 122 (R.I. 2012) ("[U]nder established contract law principles, when there is an unambiguous contract and no proof of duress or the like, the terms of the contract are to be applied as written.") (internal quotation marks omitted); Rivera v. Gagnon, 847 A.2d 280, 284 (R.I. 2004) ("If the contract terms are clear and unambiguous, judicial construction is at an end for the terms will be applied as written.").

[10]    Contrary to another of plaintiff's contentions, there is no requirement that the "written agreement" authorized by Oken v. National Chain Co., 424 A.2d 234, 235 (R.I. 1981), must include specific language stating that the person entering into such an agreement is agreeing to forfeit his or her commissions. The language contained in the Sales Commission Agreement in this case is completely clear and dispositive, and no further embellishment was necessary. See Pearson v. Pearson, 11 A.3d 103, 109 (R.I. 2011) ("We decline to read non-existent terms * * * into a contract.").

revised decision after he came to realize that his initial decision was the product of documentary confusion. It is our view that the trial justice acted appropriately and with laudable candor in recognizing the error in his initial decision and in then proceeding to address the merits of the counterclaim in light of the provisions of the correct document (the Asset Purchase Agreement). The plaintiff has not directed our attention with specificity to any error that he alleges has been committed in that regard or otherwise. See Town Houses at Bonnet Shores Condominium Association v. Langlois, 45 A.3d 577, 584 (R.I. 2012) (declining to address on appeal issues that "were not sufficiently developed in [appellant's] * * * submissions to this Court"); Wilkinson v. State Crime Laboratory Commission, 788 A.2d 1129, 1131 n.1 (R.I. 2002); see also McMahon v. Deutsche Bank National Trust Co., 131 A.3d 175, 176 (R.I. 2016) (mem.). Accordingly, we find the plaintiff's counterclaim argument to be waived and we affirm the trial justice's ruling.

## V

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record may be remanded to that tribunal.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:** James F. Nuzzo v. Nuzzo Campion Stone Enterprises, Inc. f/k/a Corriveault Holdings, Inc.

**CASE NO:** No. 2015-132-Appeal.
No. 2015-133-Appeal.
(PC 08-3644)

**COURT:** Supreme Court

**DATE OPINION FILED:** April 21, 2016

**JUSTICES:** Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:** Associate Justice William P. Robinson III

**SOURCE OF APPEAL:** Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Jeffrey A. Lanphear

**ATTORNEYS ON APPEAL:**

For Plaintiff:     David M. Campbell, Esq.

For Defendant:  Andrew J. Tine, Esq.